IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

LESSIE ANDERSON,

                          Plaintiff,

           vs.                          Civil Action No.
                                        9:04-CV-0030 (NAM/DEP)

LOYCE DUKE, *et al.*,

                          Defendants.

---

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

LESSIE ANDERSON, *pro se*

FOR DEFENDANT:

HON. ANDREW M. CUOMO            ADRIENNE J. KERWIN, ESQ.
Office of the Attorney General  Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

---

## REPORT AND RECOMMENDATION

        Plaintiff Lessie Anderson, a former New York State prison inmate

who is proceeding *pro se* and *in forma pauperis*, has commenced this

action pursuant to 42 U.S.C. § 1983 alleging that during the period of his

incarceration, his civil rights were violated by the defendants.  In his complaint, plaintiff asserts that a brief delay in scheduling the Eid al-Fitr prayer service, marking the end of Ramadan, at the prison facility at which he was housed at the relevant times represented a constitutionally significant interference with the free exercise of his legitimately held religious beliefs, and that prison officials further violated his rights by improperly disclosing information regarding a grievance filed to address the issue, and by conducting a grievance investigation in his absence. Plaintiff's complaint seeks recovery of damages in the amount of one hundred million dollars from each of the named defendants.

Currently pending before the court is a motion by the three remaining named defendants for summary judgment dismissing plaintiff's claims on a variety of grounds, including on the merits and based upon their claim of entitlement to qualified immunity from suit.  In light of my finding that the record presents no genuinely disputed issues of material fact, and that plaintiff has failed to prove a constitutionally significant interference with his First Amendment religious exercise rights or a violation of his rights to due process, as a matter of law, I recommend that defendants' motion be granted.

I.      BACKGROUND

Plaintiff is a former New York State prison inmate who, at the relevant times, was entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), and incarcerated within the Hudson Correctional Facility ("Hudson"), located in Hudson, New York. Amended Complaint (Dkt. No. 20) at 2.  From his complaint, it appears that during the time of his incarceration at Hudson plaintiff was a practicing Muslim.  *Id.* at 3-4.

Plaintiff's allegations center around an Islamic prayer service and related observances collectively known as Eid al-Fitr, and conducted yearly in conjunction with the end of the holy month of Ramadan. Amended Complaint (Dkt. No. 20) at 3-B; *see also Ford v. McGinnis*, 352 F.3d 582, 584-85 (2d Cir. 2003).   The timing of Ramadan is controlled by the Islamic lunar calendar.  See http://encarta.msn.com/encyclopedia 762505522/Eid al-Fitr.html  (last visited Jan. 2, 2008); *see also Ford,* 352 F.3d at 584-85.  Consequently, the beginning and end dates for the month of Ramadan occur at different times each year.  *Id.* at 585.  Eid al-Fitr commemorates the successful completion of Ramadan, marked by the citing of the new moon, and involves religious festivities which include a

-3-

sweet breakfast, followed by a prayer, and later the Eid al-Fitr feast. *Ford,*
352 F.3d at 584-85.  Under Muslim law and tradition, the celebration of Eid
al-Fitr must occur within three days of the sighting of the new moon
signaling the end of Ramadan.  *Id.*

In 2003 the end of Ramadan was declared at 4:35 pm on November
24, 2003 by Imam Zakee, a Muslim chaplain serving inmates at Hudson.
Duke Decl. (Dkt. No. 50-14) ¶ 23.  When that announcement was made
Oscar McLaughlin, the chaplain at Hudson, with corresponding
responsibility for making arrangements for all religious programming at the
facility, including activities associated with Eid al-Fitr, and whose normal
working hours were from 7:30 a.m. until 3:30 p.m., had already left work
for the day.  McLaughlin Decl. (Dkt. No. 50-18) ¶¶ 2, 5-7, 13-14.

Upon his arrival at the facility on November 25, 2003, Chaplain
McLaughlin began making arrangements for the Eid al-Fitr observance.
McLaughlin Decl. (Dkt. No. 50-18) ¶ 16; *see also* Duke Decl. (Dkt. No. 50-
14) ¶ 27.  Those arrangements required the preparation of "call outs" in
light of the congregate nature of the Eid al-Fitr religious festivities.
McLaughlin Decl. (Dkt. No. 50-18) ¶¶ 9-11; Duke Decl. (Dkt. No. 50-14) ¶
16.  Since call out slips, which are in essence authorizations permitting

inmates to attend special events, must be received for distribution by appropriate prison officials by 2:00 p.m. on the day preceding the corresponding event, and Chaplain McLaughlin was unable to make arrangements for all of the call outs for Eid al-Fitr until November 25, 2003, the event was scheduled for, and ultimately held on, November 26, 2003.  Duke Decl. (Dkt. No. 50-14) ¶¶ 16-21, 29, 31.  Plaintiff requested and was permitted to attend the 2003 Eid al-Fitr events.  Duke Decl. (Dkt. No. 50-14) Exh. A; *see also* Finkelstein Decl. (Dkt. No. 50-3) Exh. A (Plaintiff's Deposition) at 42.  Plaintiff was also allowed to further commemorate Eid al-Fitr in 2003 by praying privately in his cell. Finkelstein Decl. (Dkt. No. 50-3) Exh. A at 32.

In or about late November of 2003, plaintiff filed an inmate grievance regarding the delay in scheduling the Eid al-Fitr prayer service.  Amended Complaint (Dkt. No.  20) at 3-C.  Because that grievance implicated allegations of staff misconduct, it was forwarded directly to the facility superintendent for investigation, pursuant to both custom and practice at Hudson and DOCS Directive No. 4040, governing such grievances, thus by-passing the Inmate Grievance Review Committee ("IRGC") stage otherwise prescribed under the DOCS inmate grievance program.  Testo

Decl. (Dkt. No. 50-7) ¶¶ 7-14.  Following an investigation, which included

an interview by Deputy Superintendent Duke of the plaintiff on December

23, 2003 and contact with Sheek Ismael Rahim, from Ministerial Services

in Albany, New York, plaintiff's grievance was denied by the

superintendent, and that denial was unanimously upheld on appeal to the

DOCS Central Office Review Committee ("CORC").  Testo Decl. (Dkt. No.

50-7) ¶¶ 15-16 and Exhs. C and D.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on January 9, 2004 and, at the

court's direction, filed an amended complaint on June 20, 2005.  Dkt. Nos.

1, 6, 15, 20.  Named as defendants in plaintiff's complaint, as amended,

are Loyce Duke, Deputy Superintendent of Programs at the facility;

Herbert McLaughlin, the Superintendent at Hudson; D. Thomas Testo, a

Grievance Supervisor; Oscar L. McLaughlin, the prison chaplain at

Hudson; and a watch commander who is not identified by name in

plaintiff's complaint.

While somewhat ambiguous on this score, plaintiff's complaint

appears to assert that by their actions defendants abridged his

constitutional right to freely exercise his chosen religious beliefs, as

guaranteed under the First Amendment, and additionally violated certain rights of an unspecified origin to confidentiality associated with the specifics of his grievance.

On January 26, 2006 defendant Herbert McLaughlin responded to plaintiff's amended complaint by seeking dismissal of all claims against him based upon the lack of his personal involvement in the constitutional deprivations alleged.  Dkt. No. 31.  That motion, which plaintiff did not oppose, was granted based upon a report and recommendation issued by me on April 17, 2006 (Dkt. No. 42), and later approved and adopted by Chief District Judge Norman A. Mordue on September 27, 2006.[1]  Dkt. No. 45.

On April 5, 2007, following the close of discovery, the remaining defendants moved for summary judgment dismissing plaintiff's claims on a variety of bases, arguing that 1) the record does not disclose the existence of any constitutionally significant deprivation of plaintiff's First Amendment free exercise right; 2) plaintiff's due process rights were not violated through the disclosure of grievance information or failure to include him in

_____

[1]    Chief Judge Mordue's order required that any effort to replead plaintiff's claims against defendant Herbert McLaughlin be made through the filing of a second amended complaint on or before October 30, 2006.  Dkt. No. 45 at 2.  The docket sheet in this case does not disclose the filing of any such second amended complaint in the action.

a grievance investigation; 3) plaintiff's state law claims are barred under

N.Y. Correction Law § 24; 4) pursuant to 42 U.S.C. § 1997e(e), plaintiff is

precluded from recovering compensatory damages, in light of his failure to

establish the existence of a physical injury resulting from defendants'

actions; and 5) in any event, the defendants are entitled to qualified

immunity.  Dkt. No. 50.  Plaintiff has since responded in opposition to

defendants' motion, Dkt. No. 54, which is now ripe for determination and

has been referred to me for the issuance of a report and recommendation,

pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York

Local Rule 72.3(c).[2]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Summary Judgment Standard

    Summary judgment is governed by Rule 56 of the Federal Rules of

Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled

---

    [2]    An application filed by the plaintiff on or about November 6, 2007 seeking the entry of default judgment, based upon defendants' failure to file a reply in connection with their summary judgment motion, was denied by the court.  Dkt. No. 56.

to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505,

2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line,*

*Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes

of this inquiry, if it "might affect the outcome of the suit under the

governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also*

*Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing

*Anderson*).  A material fact is genuinely in dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs

are entitled to special latitude when defending against summary judgment

motions, they must establish more than mere "metaphysical doubt as to

the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith*

*Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court

to consider whether *pro se* plaintiff understood nature of summary

judgment process).

　　　　When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Plaintiff's Free Exercise Claim

-10-

While inmates confined within prison facilities are by no means entitled to the full panoply of rights guaranteed under the United States Constitution, including its First Amendment, the free exercise clause of that amendment does afford them at least some measure of constitutional protection, including their right to participate in congregate religious services.  *See Pell v. Procunier,* 417 U.S. 817, 822, 94 S. Ct. 2800, 2804 (1974) ("In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his [or her] status as a prisoner or with the legitimate penological objectives of the corrections system."); *see also Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir. 1993) ("It is well established that prisoners have a constitutional right to participate in congregate religious services.") (citing cases).  The task of defining the contours of that right in a prison setting requires careful balance of the rights of prison inmates against the legitimate interest of prison officials tasked with maintaining prison security.  *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S. Ct. 2400, 2404 (1987); *Ford*, 352 F.3d at 588; *Salahuddin,* 993 F.2d at 308.  When determining whether a refusal by prison officials to permit an inmate's attendance at a religious service or event impinges upon that individual's First Amendment free

-11-

exercise right, the inquiry is "one of reasonableness, taking into account whether the particular [act] affecting [the] right. . . is 'reasonably related to legitimate penological interests.'" *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.), *cert. denied,* 498 U.S. 951, 111 S. Ct. 372 (1990) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987)); *Ford,* 352 F.3d at 588; *see also Farid v. Smith,* 850 F.2d 917, 925 (2d Cir. 1988) (citing, *inter alia, O'Lone,* 482 U.S. at 348, 107 S. Ct. at 2404).

Based upon the record presently before the court, when considered against the backdrop of these legal principles, no reasonable factfinder could conclude that plaintiff's First Amendment free exercise rights were abridged by defendants' conduct. The 2003 Eid al-Fitr observance, including its prayer service, was conducted at Hudson within the required three-day period following the end of Ramadan, comporting with accepted Islamic tenets.  This fact, particularly when considered in combination with plaintiff's ability to pray privately in his cell to commemorate the close of Ramadan, firmly undermines plaintiff's contention that his free exercise rights were impinged by defendants' actions.

It should be noted that even had the Eid al-Fitr ceremony been delayed beyond the limits set by Islamic law, defendants would

-12-

nonetheless be entitled to dismissal of plaintiff's free exercise claim. It is well-established that an inmate's right under the First Amendment to participate in congregate religious events is trumped by the legitimate penological concerns of prison authorities. *O'Lone*, 482 U.S. at 348, 107 S. Ct. at 2404; *Salahuddin*, 993 F.2d at 308; *Benjamin*, 905 F.2d at 574. In this instance, defendants have articulated legitimate, practical, and penologically-related reasons for the brief delay in scheduling the 2003 Eid al-Fitr ceremony at Hudson, attributing that delay to a combination of logistics and the procedures necessary to assure the security and safety of inmates and prison officials through the use of the call-out policy implemented at the facility. Under these circumstances I find that the delay in issue, even if constitutionally significant, is defensible as being supported by legitimate penological concerns.

In sum, the record in this case establishes that plaintiff was not denied his right to participate in the proper Eid al-Fitr observances within the time frame dictated by his Islamic beliefs. Plaintiff's complaint appears to be that the observances should have been held when desired by him, rather than at a time sufficient to permit an orderly scheduling of festivities associated with the religious event, consistent with the legitimate policies

-13-

implemented at Hudson to preserve the integrity and security of the

facility.  Under these circumstances I recommend a finding, as a matter of

law, that no First Amendment free exercise violation has been established.

C.     Plaintiff's Due Process Claims

The second prong of plaintiff's complaint concerns defendants'

actions in connection with his grievance regarding the Eid al-Fitr delay.  In

the relevant portion of his complaint, which appears to be predicated

principally upon state law and regulation, plaintiff seemingly argues that

the defendants violated his constitutional rights by disclosing specifics

surrounding his grievance complaint to other corrections workers at

Hudson, and further that his rights were somehow violated when a hearing

was conducted regarding his grievance in his absence, without affording

him the opportunity to be heard.

The Fourteenth Amendment to the United States Constitution

requires that a person deprived of a protected liberty or property interest

be provided procedural due process in connection with that deprivation.

*Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393 (2005).  In

order to establish constitutional entitlement to procedural due process, a

plaintiff must therefore make a threshold showing that he or she has been

-14-

deprived of such a protected interest.  *Id.*; *see also Tellier v. Fields*, 280

F.3d 69, 79-80 (2d Cir. 2000).  Such a protected property or liberty interest

can be conferred, *inter alia,* by statute.  *See Wilkinson*, 545 U.S. at 221,

125 S. Ct. at 2393; *see also O'Connor v. Pierson*, 426 F.3d 187, 196 (2d

Cir. 2005).

　　　Plaintiff has cited no authority, nor is the court aware of any, which

confers upon prison inmates a constitutionally significant liberty or

property interest in secrecy surrounding an administrative grievance filed

at a prison facility.  Similarly, plaintiff has cited no authority which would

confer upon a prison inmate a constitutional right to a hearing, and to

testify at such hearing, in connection with an administrative grievance.

This lack of support for plaintiff's arguments is consistent with well-

established case law revealing that prior inmates have no constitutionally

protected right of access to an administrative grievance process at a

prison facility.  *Rhodes v. Hoy*, No. 05-CV-836, 2007 WL 1343649, at *6

(N.D.N.Y. May 5, 2007) (Scullin, J.) (noting that inmates have "no

constitutional right of access to the established inmate grievance

program"); *Davis v. Buffardi*, No. 01CV0285, 2005 WL 1174088, at *3

(N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[P]articipation in an inmate

grievance process is not a constitutionally protected right.") (citations omitted).

Moreover, it appears evident that the due process claims surrounding plaintiff's grievance arise under state law and regulation. Such claims, unfortunately for the plaintiff, are not cognizable under section 1983. *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("[A] violation of state law is not cognizable under § 1983."). For this reason internal regulations governing prison grievance procedures do not give rise to federally protected liberty interests, and the alleged failure of prison officials to follow prescribed procedures associated with an established grievance process does not support a civil rights claim under section 1983, absent the independent deprivation of a right protected under the Constitution, or by federal statute. *See Shell v. Brzezniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does [sic] not give rise to a cognizable § 1983 claim."); *Aho v. Hughes*, No. 03CV1552, 2005 WL 2452573, at *7 (D. Conn. Sept. 30, 2005) (noting that the "failure of a correction official to comply with the institutional grievance procedures

-16-

is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right.") (citations omitted)*; Cancel v. Goord*, No. 00 Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("While there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution, and therefore a violation of such procedures does not give rise to a claim under § 1983.") (internal citations omitted); *see also Hunnicutt v. Armstrong*, 305 F. Supp. 2d 175, 188 (D. Conn. 2004), *vacated on other grounds*, 152 Fed. Appx. 24 (2d Cir. 2005) (summary order).

Embodied within plaintiff's allegations regarding the processing of his grievance is the contention that confidential information surrounding that grievance was impermissibly disclosed by prison officials to others at the facility.  Under certain circumstances the disclosure by prison officials of inherently confidential and sensitive information regarding an inmate can support a due process violation claim under the Fourteenth Amendment.  *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (recognizing limited right of privacy shielding information that a person is

-17-

infected with Human Immunodeficiency Virus ("HIV")); *see also Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir. 1999) (extending *Doe* to information regarding an inmate's transexualism).  The applicability of this limited right to privacy, which varies with the plaintiff's condition, *Rodriguez v. Ames*, 287 F. Supp. 2d 213, 220 (W.D.N.Y. 2003), applies in the case of an inmate who suffers from a medical condition which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence, particularly when word of the condition is likely to spread through "humor or gossip."  *Powell*, 175 F.3d at 112; *Rodriguez*, 287 F. Supp. 2d at 220; *see also Leon v. Johnson*, 96 F. Supp. 2d 244, 252 (W.D.N.Y. 2000).

In this instance, plaintiff's confidentiality claim lacks these necessary elements.  Neither plaintiff's complaint nor the record currently before the court discloses any basis to conclude that such deeply personal, confidential information regarding the plaintiff was potentially disclosed by prison officials to others within the facility.  The limited, due process right to privacy in this case therefore does not apply.[3]

---

[3]      It should be noted that plaintiff's privacy claim is also lacking in factual support.  Plaintiff has failed to adduce any proof that defendants Testo and/or McLaughlin disclosed specifics of his grievance to other inmates, and in fact has admitted having no awareness of any actions taken by defendants Testo and McLaughlin to disclose the specifics of his grievance to others.  *See* Finkelstein Decl.

D.      Plaintiff's State Law Claims

Interpreting plaintiff's complaint to include state law causes of action

among the claims asserted within it, particularly as related to the

processing of his grievance, defendants argue that such claims are

barred, both under the Eleventh Amendment and by state law.

Defendants' argument in support of dismissal of plaintiff's state law

claims rests principally upon section 24 of the N.Y. Correction Law, which

provides that

1.      [n]o civil action shall be brought in any court of the state,
        except by the attorney general on behalf of the state,
        against any officer or employee of [the Department of
        Correctional Services], in his personal capacity, for
        damages arising out of any act done or the failure to
        perform any act within the scope of the employment and
        in the discharge of the duties by such officer or
        employee.

2.      [a]ny claim for damages arising out of any act done or
        the failure to perform any act within the scope of the
        employment and in the discharge of the duties of any
        officer or employee of [the Department of Correctional
        Services] shall be brought and maintained in the court of
        claims as a claim against the state.

N.Y. Correct. Law § 24.  It is well-established, as defendants now contend,

---

(Dkt. No. 50-3) Exh. A at 30, 45-46. As defendants alternatively argue, this provides a
separate, legally distinct basis for the granting of their motion for summary judgment.
*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53(1986)
(authorizing the issuance of summary judgment when a party fails to offer proof to
support an essential element of his claim).

that this section, in combination with the Eleventh Amendment, precludes the assertion of pendent state law claims against corrections workers in their individual capacities, whether in state or federal court.  *See Ierardi v. Sisco*, 119 F.3d 183, 186 (2d Cir. 1997) (citations omitted); *Baker v. Coughlin*, 77 F.3d 12, 14-16 (2d Cir. 1996); *Parker v. Fogg*, No. 85-CV-177, 1994 WL 49696, at *9 (N.D.N.Y. Feb. 17, 1994) (McCurn, S.J.).

Because section 24 confers immunity on corrections officers from suit, and federal courts therefore lack authority to determine substantive state law claims against corrections officers in light of that section, in the event that plaintiff's complaint could be liberally construed to assert state law claims, those claims are subject to dismissal on this basis.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's free exercise claim in this action, which stems from a modest delay in conducting the Eid al-Fitr celebration at Hudson in 2003 following declaration of the close of Ramadan, although occurring within the three-day window authorized under controlling Islamic tenets, which delay was justified by legitimate penological concerns, lacks merit as a matter of law, particularly in view of plaintiff's ability to engage in alternative measures to celebrate the event.  Plaintiff's due process

claims, addressing the failure of prison officials to permit him to participate actively in the investigation of his grievance regarding the matter and their alleged disclosure of specifics regarding the grievance to other inmates, are similarly deficient, plaintiff having failed to establish the existence of any cognizable property or liberty interest of which he was deprived without due process, or to demonstrate the existence of a federally protected right of access to the internal grievance process within Hudson. Turning to plaintiff's state law claims associated with the processing of his grievance, I find that those claims are barred under N.Y. Correction Law § 24.  Under these circumstances, I recommend that defendants' motion be granted and plaintiff's complaint be dismissed, and find it unnecessary to address defendants' alternative argument in favor of dismissal, urging their alleged entitlement to qualified immunity.[4,5]

---

[4]   Defendants Duke and Testo also seek dismissal of plaintiff's First Amendment claims as against them based upon their assertion that they had no involvement in the scheduling of the Eid al-Fitr ceremonies.  In light of my determination that plaintiff's First Amendment claim is lacking in merit, I have not addressed this independent basis for dismissal of plaintiff's free exercise claim against them.

[5]   As was previously mentioned, plaintiff included in his complaint an unidentified "Watch Commander" as one of the defendants in this action.  In light of plaintiff's failure to ascertain the identity of the "Watch Commander" so as to permit the timely service of process, I recommend that the complaint be dismissed as against that defendant as well, though without prejudice.  *See Felix-Torres v. Graham*, __ F. Supp. 2d __, 2007 WL 3046699, at *5 (N.D.N.Y. Oct. 17, 2007) (Kahn, D.J. and Homer, M.J.)

Based upon the foregoing, it is hereby

RECOMMENDED that defendants' motion for summary judgment dismissing plaintiff's complaint in its entirety (Dkt. No. 50) be GRANTED, and plaintiff's complaint DISMISSED in all respects, with prejudice as against defendants Duke, McLaughlin and Testo but without prejudice as against the defendant identified only as "Watch Commander."

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).


Dated:      January 4, 2008
            Syracuse, NY

_____
David E. Peebles
U.S. Magistrate Judge

_____

(adopting recommended dismissal of claims without prejudice against four "John Doe" defendants because those defendants were not identified by plaintiff or served with process).